IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| RUTH ANN RICHMOND, | ) | |
| Plaintiff | ) | |
| v. | ) | No. 4:04-cv-70 |
| LIFE INSURANCE CORPORATION OF NORTH AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## **MEMORANDUM OPINION**

This is a diversity action to recover proceeds under two life insurance policies by Ruth Ann Richmond upon the death of her husband Joe Richmond. Mr. Richmond died of a gunshot wound which occurred on May 8, 2001. Both life insurance policies had exceptions excluding the payment of benefits where the death resulted from suicide or intentionally self-inflicted injuries. The sole question at issue in this case is whether Mr. Richmond's death was accidental or intentional. Currently pending are cross motions for summary judgment [Court Files #22, #23, and #25]. For the reasons that follow, all three motions will be denied.

## I.

### *Factual Background*

The following factual allegations are considered in the light most favorable to the non-movants.

Joe Richmond died on May 10, 2001, as the result of a gunshot wound he sustained at his home on May 8, 2001. Plaintiff Ruth Ann Richmond alleges that she was the only eyewitness to the shooting. She contends that Mr. Richmond was walking down the hallway past the laundry room door where she was standing. He was carrying a 1951 Beretta .625 caliber (25 auto), model 950, semi-automatic pistol when his foot became hung, he lost his balance, and he stumbled as if he was losing control of the gun. When he attempted to regain control of the gun, it accidentally discharged, striking him in the righthand side of the neck.

Plaintiff claims that Mr. Richmond had a history of falling and losing his balance as the result of orthopedic injuries he suffered in an automobile accident in 1993. She further claims that the Richmond farm had had a problem with coyotes and it would not be at all unusual for Mr. Richmond to be carrying a firearm. In fact, approximately one week prior to the shooting the Richmond family dog had been attacked and severely injured by a coyote.

Plaintiff's expert, William L. Peters, offers the opinion that the 950 semi-automatic pistol was defective to the following extent:

> It is entirely possible that a person could fully load this gun, without cocking the hammer, and believe it to be safe, since the hammer is not cocked. If the firing pin was operational, the hammer could be placed in the half-cocked position in the mistaken belief that the gun is safe in this condition, and a subsequent pull of the trigger could possibly cause an unintended firing.

Further, plaintiff also offers testimony that the gun in question had a prior history of accidentally discharging on no less than three separate occasions on or about the Richmond property.

The defendants contend that there is overwhelming evidence that Mr. Richmond's death was the result of suicide. That evidence, among other things, includes the following:

> 1. Plaintiff reported to another insurer, CNA, that her husband was "walking down the stairs" when the gun discharged, only to later testify that he actually "stumbled."
>
> 2. The Tennessee Bureau of Investigation determined that the subject pistol was "in normal operating condition with the safety features functioning."
>
> 3. Medical records from the Lincoln County Regional Hospital included an EMS report that emergency dispatch involved a "possible attempted suicide."

3

4. The state medical examiner determined the cause of death was a "gunshot wound to head and neck" and the manner of death to be "suicide."

5. The death certificate reflects that decedent "shot self" and the manner of death was "suicide."

6. Immediately after the shooting, plaintiff telephoned her attorney and exclaimed, "Joe just shot himself" in the presence of local law enforcement officials.

7. The investigating authorities reported to LINA that "there was no indication at the scene that plaintiff was an eyewitness - she did not even mention this to police."

8. Plaintiff testified that decedent was "constantly in pain" due to injuries suffered in the automobile accident.

9. Immediately prior to the shooting, decedent was on the telephone attempting to obtain more pain medication.

10. Decedent threatened to harm himself on numerous prior occasions.

11. Plaintiff gave an inconsistent and evolving version of the events and was unable to testify as to the position of her husband's body, whether the gun was cocked, or even why he was carrying a loaded pistol in the house.

12. Plaintiff candidly admitted in her deposition that she "could not tell you exactly what happened at the time because I was just too scared."

The defendants' experts put forward the opinion that the accident could not have happened the way plaintiff suggests and the gun could not have gone off without someone (*i.e.*, the decedent) intentionally putting pressure on the trigger.

4

## II.

### *Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

III.

### *Conclusion*

Based on the foregoing, the court is of the opinion that a question of material fact remains to be determined by the jury. Plaintiff claims to be a witness to the accidental firing of the gun and intends to present evidence that the gun had accidentally fired at least three times in the past. Plaintiff's expert suggests in at least a viable theory how the accidental firing might have happened. On the other hand, defendants' experts opine that the method of accidental firing suggested by the plaintiff is impossible. The court cannot find, as a matter of law, that either side's opinion is correct. Accordingly, a question of fact for the jury remains. The pending motions for summary judgment [Court Files #22, #23, and #25] will be denied.

Order accordingly.

*s/ James H. Jarvis*
UNITED STATES DISTRICT JUDGE
